UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LULE STAFA,<br><br>                              Plaintiff,<br><br>-against-<br><br>INNOVATIVE FACILITY SERVICES and UNION 32B-J,<br><br>                              Defendants. | Case No. 1:23-cv-10509 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

*Pro se* Plaintiff Lule Stafa ("Plaintiff" or "Stafa") brings this action under the Age Discrimination in Employment Act ("ADEA") of 1967, 29 U.S.C. § 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*, alleging that her former employer, Innovative Facility Services, Inc. ("IFS"), retaliated against her and terminated her employment on the basis of her age. *See* Dkt. 1 ("Compl.") at 2-5. The Court construes the Complaint as also asserting claims against IFS for discrimination on the basis of race or national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and a hybrid-duty claim against IFS and Plaintiff's union, the Service Employees International Union, Local 32B-J (the "Union"), alleging that IFS breached the parties' collective bargaining agreement (the "CBA") in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and that the Union breached its duty of fair representation in violation of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.* Dkt. 8 at 1; *see* Compl. at 8-9, 11-13.

On March 14, 2024, the Union moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be

granted. *See* Dkt. 14. On July 29, 2024, IFS moved to dismiss the Complaint pursuant to Rule 12(b)(6) for failure to comply with the applicable statute of limitations and for failure to state a claim upon which relief can be granted, and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See* Dkt. 29. In the alternative, IFS moved to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, and to stay the action pending arbitration. *See* Dkt. 29. For the reasons stated below, the Court GRANTS the Union's motion to dismiss, GRANTS IFS's motion to compel arbitration and stay the action pending arbitration, and does not reach the merits of IFS's motion to dismiss.

## BACKGROUND

For purposes of resolving the motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all reasonable inferences in Stafa's favor. *See Costin v. Glens Falls Hosp.*, 103 F.4th 946, 952 (2d Cir. 2024). Given Stafa's *pro se* status, the Court construes the Complaint broadly. *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006))). The Court also considers materials incorporated by reference in the Complaint "and documents that, although not incorporated by reference, are integral to the complaint." *Temple v. Hudson View Owners Corp.*, 222 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)); *id.* at 323 ("A document is 'integral' if the complaint 'relies heavily on its terms and effects.'" (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))).

I. **Factual Allegations**

Plaintiff Lule Stafa, proceeding *pro se*, is a resident of New York City.  Compl. at 2.  In or around March 2017, Stafa began working as a Cleaner at Saks Fifth Avenue in Manhattan under the employment of "ABM."  *Id.* at 8.  On or around October 1, 2017, IFS replaced ABM as her employer.  *Id.*

When IFS "took over," Vera Lushi — the Forelady — gave Stafa "double the work," required her to "clean the entire floor by" herself, and "bullied [her] for [her] old age and for not speaking English."  *Id.* at 8-9; *see* Dkt. 31-2 ("Arb. Op.") at 3 (identifying Vera as the Forelady); Dkt. 37 ("Pl. IFS Opp.")[1] at 2; *see also* Compl. at 8 ("I was a weak link since I was [of] old age and couldn[']t speak English."); Pl. IFS Opp. at 2 ("I was bullied and picked on and not given any growth opportunity besides the do[u]ble work I was given most days of the week.  I felt like a target . . . .").  According to Stafa, Vera and her team took "revenge" on Stafa because Stafa "was treated well [by] ABM" whereas Vera was "let go" by ABM prior to being rehired by IFS.  Compl. at 9.  Stafa further contends that "most of the people [IFS] [was] hiring were Dominican" and that IFS was "trying to let go of [her] and a few other Albanian [and] African men or ladies . . . by overworking [them] and not listening to any of

---

[1] On a motion to dismiss, "consideration is limited to the factual allegations in [the] . . . complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs have knowledge and relied on in bringing suit."  *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  Courts have discretion, however, to show *pro se* plaintiffs more leniency.  While "material outside a complaint generally is not to be taken into consideration on a motion to dismiss, the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where, as here, those allegations are consistent with the complaint."  *Rodriguez v. McGinnis*, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998).  The Court therefore considers Stafa's allegations in her opposition submissions insofar as they are not inconsistent with the allegations pleaded in her Complaint.

[their] complaints." *Id.* (explaining that "one of [the] Albanian ladies . . had to quit [because] she couldn't handle the double work and the emotional pressure [IFS] put her through"). Despite Stafa's seniority, IFS gave her an unfavorable shift schedule, which required her "to move to a new address where [she] had to pay higher rent [and] where the buses would run all day and night." *Id.* at 8-9. Stafa also lost her Sunday shift — which "paid double" — with no apparent explanation. *Id.* at 9. When Stafa complained to IFS about her working conditions, they would direct her to the Union, which "was always giving [her] hope and being nice to [her]" but "not doing what they promised." *Id.*

On November 13, 2020, around noon, Stafa's manager caller her into his office and told her that she "should never mention" Vera, who seemed to be his "good friend[]." Pl. IFS Opp. at 2. Also at this meeting, Stafa's manager "ordered" her to ask Vera for permission whenever she needed to "use the bathroom." *Id.* Later that day, at 6:30 p.m., Stafa's manager informed her that she was being "let go . . . from [her] job" for allegedly stealing company time by clocking in "2-3 minutes late after lunch," *id.*, and chatting with her coworkers "instead of going back to work," although Stafa explains that she and her coworkers "had lunch at the same time" and "all clocked in at the same time," Compl. at 9; *see id.* at 12; Pl. IFS Opp. at 2; *see also* Dkt. 22 ("Pl. Union Opp.") at 1 (noting that she "never left earl[y] from work, [and] only took lunch when [she] was supposed to[]").

Subsequently, Stafa filed a grievance pursuant to the parties' CBA, and the Union took her to arbitration against IFS to challenge whether just cause existed to terminate her employment. Arb. Op. at 1-2; *see* Compl. at 9. Although IFS "could not produce any video or witnesses," Compl. at 9, the arbitrator entered a final award in favor of IFS on August 11, 2023, and denied Stafa's grievance "in its entirety," Arb. Op. at 10; *accord* Pl. IFS Opp. at 2; *see also* Pl. Union Opp. at 2 (explaining that IFS informed the Union that "the cameras [did]

4

not work"). After the arbitrator denied her grievance, Stafa requested a Notice of Right to Sue both IFS and the Union from the U.S. Equal Employment Opportunity Commission ("EEOC"). Compl. at 6, 9; *see also id.* at 8-9 (requesting Notice of Right to Sue the Union dated Sept. 28, 2023); *id.* at 11-14 (requesting Notice of Right to Sue IFS dated Sept. 21, 2023). The EEOC issued Stafa a Notice of Right to Sue the Union on October 2, 2023. *Id.* at 10 (Notice of Right to Sue the Union issued Oct. 2, 2023). Plaintiff has not appended a Notice of Right to Sue IFS to her Complaint or to either of her opposition submissions to Defendants' motions to dismiss. On November 28, 2023, Stafa filed this action. *See generally* Compl.

## II.    Procedural History

On March 14, 2024, the Union filed its motion to dismiss the Complaint. *See* Dkt. 14; *see also* Dkt. 15 ("Union Br."); Dkt. 16 ("Elysee Decl."). On April 9, 2024, Stafa filed her opposition to the Union's motion. *See* Pl. Union Opp. On July 29, 2024, IFS filed its motion to dismiss, or in the alternative, compel arbitration. Dkt. 29; *see* Dkt. 30 ("Lopez Decl."); Dkt. 31 ("Cabral Decl."); Dkt. 32 ("IFS Br."). On September 19, 2024, Stafa filed her opposition to IFS's motions, *see* Pl. IFS Opp., and on October 1, 2024, IFS filed a reply in further support of its motion, *see* Dkt. 38 ("IFS Reply").

## III.    Legal Standard for Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). On a Rule 12(b)(6) motion, the court must "accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (alterations adopted) (quoting

5

*Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)). The court shall not "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Courts in this Circuit "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007)); *accord Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). This is "especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002). However, "*pro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007); *see also Triestman*, 470 F.3d at 477 ("[P]ro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983))).

## DISCUSSION

### I. The Union's Motion to Dismiss

The Court will first address the Union's motion to dismiss. The Union moves to dismiss Stafa's hybrid-duty claim against it under Rule 12(b)(6) for failure to state a claim for breach of the duty of fair representation. Union Br. at 1. For the reasons set forth below, the Court agrees and dismisses Stafa's claims against the Union.

To prevail on a hybrid-duty claim against a union under the NLRA, a plaintiff "must demonstrate both (1) that [the employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation." *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 101 (2d Cir. 2022) (alterations in original) (emphasis omitted) (quoting *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005)).

6

"It is well-settled that an employee may maintain a breach of contract action based upon a CBA directly against the employer only if 'the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.'" *Black v. Anheuser-Busch In Bev*, 220 F. Supp. 3d 443, 449 (S.D.N.Y. 2016) (quoting *Tomney v. Int'l Ctr. for the Disabled*, 357 F.Supp.2d 721, 738 (S.D.N.Y. 2005)); *see also Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991) ("Any substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.").

To establish a breach of the duty of fair representation, a plaintiff must demonstrate that the "union's conduct toward [her] . . . [was] arbitrary, discriminatory, or in bad faith," *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 568 (S.D.N.Y. 2022) (citations omitted) (quoting *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372 (1990)), and demonstrate "a causal connection between the union's wrongful conduct and [her] injuries," *Johnson v. Nat'l Football League Players Ass'n*, No. 17-cv-05131 (RJS), 2018 WL 8188558, at *8 (S.D.N.Y. Oct. 3, 2018) (quoting *Vaughn v. Air Line Pilots Ass'n*, 604 F.3d 703, 709 (2d Cir. 2010)), *aff'd*, 820 F. App'x 51 (2d Cir. 2020) (summary order). "In the arbitration context, the standard for causation is a demanding one: 'a cause of action for breach of the duty of fair representation only lies where the union's action "seriously undermine[d] the arbitral process."'" *Id.* at *8 (quoting *Nieves v. District Council 37 (DC 37)*, No. 04-cv-08181 (RJS), 2009 WL 4281454, at *10 (S.D.N.Y. Nov. 24, 2009), *aff'd sub nom. Nieves v. Roberts*, 420 F. App'x 118 (2d Cir. 2011) (summary order)); *accord Naprstek v. Marriott Int'l*, No. 21-cv-08560 (CM), 2024 WL 113804, at *9 (S.D.N.Y. Jan. 10, 2024). Accordingly, when a hybrid-duty claim is based on allegations of "inadequate representation . . . during a grievance arbitration proceeding," *Tucker v. Am. Bldg. Maint.*, 451 F. Supp. 2d 591, 596 (S.D.N.Y.

7

2006), the plaintiff must establish that the union acted in a manner "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary," *Fleischer v. Barnard Coll.*, No. 19-cv-10738 (RA), 2020 WL 7360251, at *5 (S.D.N.Y. Dec. 15, 2020) (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)), *aff'd*, No. 20-4213, 2021 WL 5365581 (2d Cir. Nov. 18, 2021) (summary order).

The Court finds that Stafa has not pleaded facts sufficient to state a plausible claim under this demanding standard. As a threshold matter, Stafa's Complaint reflects that the Union treated her well throughout the term of her employment and listened to the complaints she made regarding her working conditions prior to arbitration. Compl. at 9. Although Stafa vaguely asserts that the Union did not always do "what they promised," *id.*, she provides no factual support regarding specific promises that the Union made, or subsequently broke, prior to her termination. Construing her complaint liberally, then, Stafa's claim against the Union appears to be based solely on its alleged failure to adequately represent her during the arbitration of her grievance. However, Stafa's claim fails because she has not sufficiently pleaded any facts that would support a claim the Union acted in a manner that seriously undermined the arbitration process. Stafa does not challenge any specific instances of the Union's conduct at arbitration or take issue with particular acts or omissions it may have made during the proceedings; rather, Stafa's claim against the Union appears to be based primarily on her disagreement with the outcome of the arbitration. *See id.* ("I do not agree with the arbitrator[']s decision because I know how I was treated by [IFS]."). However, "[t]he bare fact that Plaintiff did not prevail in making [her] argument does not create grounds for a claim of the breach of the duty of fair representation." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 391-92 (S.D.N.Y. 2007). Although Stafa avers that allegedly exculpatory evidence was

8

not adduced at arbitration — namely, video recordings of her clocking in and out of her lunch break — she does not place blame on the Union for the missing recordings. *See* Compl. at 9. Moreover, to the extent that Stafa takes issue with the Union having not called witnesses to testify on her behalf, "[i]f the failure to call a witness were in fact erroneous, it would qualify only as an 'error in judgment' or a 'tactical error,'" neither of which "is actionable as a . . . breach" of the duty of fair representation. *Naprstek*, 2024 WL 113804, at *11 (quoting *Barr*, 868 F.2d at 43-44).

In sum, having accepted all of her allegations as true and having drawn all reasonable inferences in her favor, the Court finds that Stafa has not pleaded that the Union acted in a manner that was arbitrary, discriminatory, or in bad faith, or that its conduct seriously undermined the arbitration process. Accordingly, the Court dismisses Stafa's hybrid-duty claim against the Union.

## II. IFS's Motion to Dismiss, or in the Alternative, to Compel Arbitration

The Court turns next to IFS's motion to dismiss, or in the alternative, to compel arbitration and stay the action pending the completion of arbitration. "Since 'jurisdiction generally must precede merits in dispositional order,' a district court should generally rule on a motion to compel arbitration before proceeding to a merits-based motion to dismiss." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018) (citations omitted) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)) (citing *Needham v. United States*, 17-cv-05944 (ER), 2018 WL 3611944, at *2 (S.D.N.Y. July 27, 2018)), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order); *accord Garnes v. Pritchard Indus., Inc.*, No. 20-cv-03843 (PAE) (SLC), 2023 WL 3980693, at *5 (S.D.N.Y. May 23, 2023) ("Before assessing [defendant's] challenges to the timeliness and legal sufficiency of [plaintiff's] claims, the Court addresses the threshold issue of whether his claims are subject to mandatory

arbitration under the CBAs."), *report and recommendation adopted*, 2023 WL 3977882 (S.D.N.Y. June 13, 2023). "Even if the arbitration issue is not considered jurisdictional, it should ordinarily be addressed first as a matter of judicial efficiency." *Harris*, 338 F. Supp. 3d at 182; *accord Tillman v. Amblnz Servs.*, No. 22-cv-06854 (JLR) (SN), 2023 WL 2770579, at *2 (S.D.N.Y. Apr. 4, 2023).

Accordingly, the Court will first address IFS's motion to compel arbitration and stay the action pending arbitration, and assess whether Stafa's discrimination claims against IFS must be brought to arbitration. The Court finds that they must.

Through the FAA, Congress sought "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983)). In line with this purpose, Section 2 of the FAA mandates that a "written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." *Regal Games, LLC v. SellerX Eight GMBH*, 714 F. Supp. 3d 251, 258 (S.D.N.Y. 2024) (omissions in original) (quoting 9 U.S.C. § 2). "When a contractual party 'fail[s], neglect[s], or refus[es] . . . to arbitrate' under the terms of an arbitration agreement" in a CBA, "another party may petition a district court for an order compelling arbitration." *Sanchez v. Clipper Realty, Inc.*, 638 F. Supp. 3d 357, 365 (S.D.N.Y. 2022) (alterations and omission in original) (quoting 9 U.S.C. § 4), *aff'd*, No. 22-2917, 2023 WL 7272062 (2d Cir. Nov. 3, 2023) (summary order). "[E]ven when the relevant complaint does not allege a violation of a [CBA]," a court "may consider the CBA in the context of [a defendant's] motion to compel arbitration." *Id.* at 366.

A district court "must grant a motion to compel arbitration [under the FAA] if the pleadings . . . and any affidavits show there is no genuine issue as to any material fact and it is

clear the moving party is entitled to judgment as a matter of law." *Gabay v. Roadway Movers, Inc.*, 671 F. Supp. 3d 371, 378 (S.D.N.Y. 2023) (quoting *Ryan v. JPMorgan Chase & Co.*, 924 F. Supp. 2d 559, 561-62 (S.D.N.Y. 2013)). When faced with a motion to compel arbitration, the court must "ordinarily answer four questions" to assess whether the parties to a CBA or other agreement "have contractually bound themselves" to arbitrate a given claim: "(1) whether the parties agreed to arbitrate; (2) the 'scope' of the arbitration agreement; (3) whether the plaintiff's federal statutory claims are 'nonarbitrable'; and (4) if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221-22 (2d Cir. 2019) (quoting *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). The Court finds that this four-part inquiry is easily satisfied here and that Stafa is contractually bound to bring her discrimination claims against IFS to arbitration.[2]

Per the operative CBA between the Union, its members, and IFS, all discrimination claims based on race, age, or national origin "made pursuant to Title VII[,] . . . the [ADEA], . . . the [NYSHRL], the [NYCHRL], . . . or any other similar laws, rules or regulations . . . shall be subject to [a] grievance and arbitration procedure . . . as the sole and exclusive remedy for violations." Dkt. 31-1 ("CBA") § 30(A), at 111. On the first question, the Court finds that this provision of the CBA unambiguously reflects that "the parties agreed to arbitrate." *Abdullayeva*, 928 F.3d at 221. Similarly, on the second question — regarding scope — the plain language of the agreement "clearly and unmistakably encompasses the

---

[2] Stafa's discrimination claims based on race, national origin, and age were not raised in the earlier arbitration proceedings brought by her and the Union against IFS. *See generally* Arb. Op. During those proceedings, the sole issue that the arbitrator considered, and to which the parties stipulated, was "[w]hether just cause existed to suspend [Stafa] . . . and to terminate her employment." *Id.* at 2; *see also* Cabral Decl. ¶¶ 8-9.

11

plaintiff's statutory claims," *id.* at 223, which include age-discrimination claims under the ADEA, NYSHRL, and NYCHRL, Compl. at 4-5, and race and national-origin discrimination claims under Title VII, Dkt 8 at 1; *see* Compl. at 8-9, 11-13.  Indeed, the Supreme Court has interpreted an earlier iteration of the same CBA between IFS and the Union to "require[] Union members to submit all claims of employment discrimination to binding arbitration." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 251 (2009).

On the third question, the Court finds that Stafa's federal statutory claims are arbitrable: the Supreme Court "has squarely held that the ADEA does not preclude arbitration of claims brought under the statute," *id.* at 258, and the Second Circuit has concluded that "claims arising under Title VII . . . are arbitrable," *Daly v. Citigroup Inc.*, 939 F.3d 415, 422 (2d Cir. 2019) (citing *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004)).  Lastly, the Court need not consider the fourth question because all of Stafa's claims fall under the ambit of the antidiscrimination arbitration provision of the parties' CBA by its plain language.

For the foregoing reasons, the Court finds that the CBA requires Stafa to bring her discrimination claims against IFS to arbitration.  Accordingly, the Court grants IFS's motion to compel arbitration and does not reach its motion to dismiss.  As a matter of course, the Court also grants IFS's request to stay the case pending arbitration.  *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) ("[T]he text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."); *cf. Harris*, 338 F. Supp. 3d at 186 n.15 ("Since *Katz*, most of the district courts in our Circuit have hesitated to dismiss arbitrable claims, even where neither side has expressly requested a stay.").

## CONCLUSION

The Union's motion to dismiss is GRANTED.  IFS's motion to compel arbitration is GRANTED.  Stafa's claims against IFS are hereby STAYED pending arbitration.  The Clerk of Court is respectfully directed to terminate the motions pending at Dkts. 14 and 29.

Dated: January 3, 2025
       New York, New York

SO ORDERED.

_____
JENNIFER L. ROCHON
United States District Judge